NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2175
_____

UNITED STATES OF AMERICA

v.

DAVID TONEY,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-17-cr-00407-001)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2020

Before: McKEE, AMBRO, and PHIPPS, Circuit Judges

(Opinion filed: July 7, 2020)

_____

OPINION*
_____

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

David Toney pled guilty to conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He appeals his conviction, contending that the District Court erred in denying (1) his motion to suppress evidence of drugs and firearms found in his two residences because the search warrants were not supported by probable cause, and (2) his motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because the warrant applications contained false and material misstatements.[1]

**I.**

Beginning in February 2015, the Pennsylvania State Police, later joined by the Delaware State Police, conducted a months-long investigation into a drug trafficking operation involving Toney and his co-defendants. Confidential informants, surveillance, intercepted phone calls of associates, and phone location or "ping" data ultimately led Pennsylvania Officers Charles Steinmetz and Javier Garcia to apply for a wiretap in September 2015 of an "unknown" male's telephone number that turned out to belong to Toney, a central figure in the trafficking operation. A judge authorized the wiretap.

On November 24, 2015, on the basis of information learned from intercepted phone calls and continued surveillance and investigation, the officers applied for a search warrant of 4181 Leidy Avenue in Philadelphia, Pennsylvania, and the next day Delaware

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Officer Eric Huston applied for a warrant for 149 Portside Court in Bear, Wilmington, Delaware.

In the affidavit for the Leidy Avenue application, Officers Steinmetz and Garcia summarized their extensive law enforcement and drug investigation experience and training. They detailed at length the fruits of their investigation, including how they came ultimately to identify Toney. They also attached the wiretap application for a "215" telephone number—Toney's number. In support of the Portside Court application, Officer Huston similarly summarized his extensive experience, his independent verification of the contents of the Leidy Avenue warrant, and his own physical surveillance of Toney. Judges granted both warrants.

The follow-up searches yielded firearms, digital scales, money counters, and packaging material, which ultimately led to the indictment. As a result, Toney and his co-defendants faced several drug conspiracy and firearm charges. Toney moved to suppress the evidence obtained from both residences, arguing that the underlying wiretap application and search warrants contained false statements, thereby requiring a *Franks* hearing, and that the search warrants were not supported by probable cause. The District Court held a hearing on the motions and considered the universe of materials filed in support of the warrants—an affidavit and two wiretap applications, one for Toney's phone and another for the phone of his associate James Townsend, for the Leidy Avenue warrant, and an affidavit for the Portside Court warrant. It denied the motions, finding that Toney had failed to make the required preliminary showing for a *Franks* hearing and that there was sufficient probable cause for both warrants.

On appeal, Toney renews his *Franks* and probable cause arguments, and contends the good-faith exception does not apply.

## II.

*A.* Franks *Hearing*[2]

A defendant has a right to challenge the truthfulness of factual statements made in a probable cause affidavit supporting a warrant if he can make "a 'substantial preliminary showing' that the affidavit contained a false statement, . . . made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citation omitted).

Toney argues that the search warrants and wiretap application contain "false and contradictory" statements, Toney Br. at 6, because while the November 24 warrants identify "TONEY" as using the "215" telephone number on September 19, 2015, the September 29 wiretap application lists the user of that number on the same date as an "unknown male." *See, e.g.*, J.A. 108 ¶ 60; J.A. 430 ¶ 218. But Toney fails to show that this statement was false, let alone how it was made knowingly or with reckless disregard of the truth. Rather, we agree with the District Court that while the officers did not know the user of the "215" number on September 29, their subsequent investigation during the nearly two months between the wiretap application and warrant applications revealed the user's identity as Toney. Specifically, as the District Court found based on the Leidy Avenue search warrant affidavit, the officers "learned that Toney was using cellphone

---

[2] We have never established a standard of review for the denial of a *Franks* hearing, *United States v. Pavulak*, 700 F.3d 651, 665–66 (3d Cir. 2012), and we decline to do so here because, under either clear-error or a fresh review, Toney's argument fails.

number 215-***-**** by using 'ping' information to track his location, conducting surveillance, and performing a traffic stop wherein Toney identified himself." J.A. 28. "In other words, [the officers] learned in October of 2015 that David Toney had been using the cellphone number, but did not know this information when they applied for the Wiretap Application on September 29, 2015." *Id.* Accordingly, we agree that Toney failed to make the "substantial preliminary showing" required for a *Franks* hearing.

Toney now raises several additional inconsistencies between the warrants and the wiretap application. As he failed to raise these challenges in District Court (or show good cause for his failure), they are forfeited. *See United States v. Rose*, 538 F.3d 175, 177 (3d Cir. 2008); *see also United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008).

Even assuming these arguments are not forfeited, Toney falls short of making the "substantial" showing that they were knowing or reckless falsehoods. For example, he points to an inconsistency in the Leidy Avenue warrant that places his activities on September 22 at "4181" Leidy Avenue, while the wiretap application places his activities on that date at "4179" Leidy Avenue. J.A. 139 ¶¶ 229–30; 461–62 ¶¶ 387–88. He also contends that the warrant affidavit contains no record of surveillance on September 23, 2015, but then erroneously states that the Chevy Tahoe that Toney was driving on October 1, 2015, was seen on Leidy Avenue on September 23, 2015. J.A. 148–49 ¶ 292; J.A. 191 ¶ 8, J.A. 146. But Toney has provided no evidence, let alone a substantial showing, that these inconsistencies were made knowingly or with reckless disregard for the truth, or that they were anything more than typographical errors. *See United States v. Johnson*, 690 F.2d 60, 65 n.3 (3d Cir. 1982) (internal citation omitted) ("[T]he warrant

5

and the affidavit contain a 'typographical error' in that there is no Chapter 4752 of the state code, although there is a Section 4752 which sets forth the designated crime. We attach no significance to this '(m)inor irregularit(y).'") (alterations in original). Accordingly, we affirm the denial of a *Franks* hearing.

B.      *The Search Warrants*[3]

Toney also contends there was not probable cause to support the Leidy Avenue warrant because, considering the inconsistencies described above, there was insufficient evidence to link him to the "215" telephone number, and much of the District Court's probable cause finding was based on intercepted conversations from this number.

In reviewing a magistrate judge's probable-cause determination, our inquiry is limited to determining whether the judge had a "substantial basis" to conclude that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). That is a "practical, commonsense decision" whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. And while evidence that a suspect is a drug dealer is not in itself probable cause to search his residence, probable cause exists where there is a connection between the suspect's home and his drug-dealing activities. *United States v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010).

---

[3] We review the District Court's findings of fact on a motion to suppress for clear error, but we exercise a fresh review of its legal conclusions. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).

As recounted by the District Court, the detailed investigation summary—which includes call logs, text data, intercepted phone calls, information from confidential informants, and surveillance observations—given in support of the warrant application provides a substantial basis for the probable cause determination that drugs or evidence thereof would be found at the Leidy Avenue house. J.A. 33–34. Contrary to Toney's argument that several of the District Court's findings of fact are contradicted by the warrant (largely related to the inconsistencies related above), there is ample corroborating evidence to support its factual findings, and thus the Court did not clearly err.[4]

Toney also challenges the Portside Court warrant. While conceding that the affidavit contained enough information to conclude that he owned the residence, he contends there was no probable cause to conclude that drug dealing activity took place there. The same information described above provides evidence that Toney was a drug-dealer, which Delaware Officer Huston independently verified. And, as well summarized by the District Court, the evidence linking the Portside Court house to drug-dealing activity includes (1) surveillance that Toney actively returned to the residence during his investigation, (2) a phone conversation to arrange a drug buy where Toney told his co-defendant that he was staying at his residence in Delaware and would be coming straight to the buy, and (3) additional surveillance of drug buys near the residence. J.A. 36–37.

---

[4] Toney cites as an example that the District Court found as fact that Toney was observed leaving 4181 Leidy Avenue on September 19, 2015, while the warrant alleges that he was leaving 4175 Leidy Avenue. J.A. 16 ¶ 15; J.A. 116 ¶ 87. But looking at all the materials considered by the District Court, it is evident the officers were not initially certain, based on their surveillance, which house Townsend was leaving because there was no house number on that particular house. It became clear as the investigation progressed, however, that the place of the suspected activity was 4181 Leidy Avenue.

Thus there is a substantial basis from which the judge could find probable cause that Portside Court was the location of drug-dealing activity.

Because we agree that the warrants were supported by probable cause, we need not address Toney's argument that the good-faith exception does not apply.

*   *   *   *   *

In this context, we affirm the well reasoned opinion of the District Court.